Wei-Drin Lee, AK Bar No. 0505025
James E. Torgerson, AK Bar No. 8509120
HELLER EHRMAN LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone: (907) 277-1900
Facsimile: (907) 277-1920

Attorneys for Defendant
THE GLIDDEN COMPANY, d/b/a ICI PAINTS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MICHAEL INVESTMENTS, LLC,<br><br>          Plaintiff,<br><br>    vs.<br><br>THE GLIDDEN COMPANY, d/b/a ICI PAINTS,<br><br>          Defendant. | Case No. 3:05-cv-0223 (TMB)<br><br>**ICI'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF MICHAEL STAPLEFORD** |

## I.   INTRODUCTION

Defendant The Glidden Company, d/b/a ICI Paints (ICI), moves to preclude Michael Stapleford from testifying as an expert regarding the performance of paint applied to the exterior of a building owned by plaintiff Michael Investments. Mr. Stapleford has opined regarding the cause of various purported performance issues such as lack of adhesion and the "uneven sheen" of the paint coating on the building. As a threshold matter, however, Mr. Stapleford lacks the requisite qualifications to be an expert on the subject of the performance of exterior paints applied to buildings. Mr. Stapleford also failed to properly apply a scientifically valid methodology to the facts of

this case. Moreover, his testimony is based largely on lay witness observations and his opinions will not assist the fact-finder in understanding issues requiring the explanation of an expert. Accordingly, his testimony should be excluded under Federal Rule of Evidence 702.

## II. FACTS

### A. Background Of This Litigation

Michael Investments filed suit against defendant ICI alleging various problems related to the painting of a building located at 2525 Gambell Street, Anchorage, Alaska, (the RAM building) using paint purchased from ICI. Michael Investments has brought claims of negligence, product liability, breach of contract, unfair trade practice, and breach of warranty against ICI.[1] In particular, the plaintiff has alleged that the paint in question, which was applied to the RAM building in the summer of 2003, resulted in "streaks" in the paint,[2] paint leaching causing window staining, peeling or bubbling of the paint, and general lack of gloss.[3] Plaintiff also contends it has suffered over $100,000 in damages, including the cost of stripping and repainting the building due to these problems.[4]

### B. Michael Stapleford's Report Purports To Contain Expert Opinions Regarding The Cause Of Alleged Paint Failures.

Mr. Stapleford is an expert witness retained by plaintiff Michael Investments to address paint performance issues in this litigation including the adhesion (or lack thereof) of the ICI paint applied to the RAM building in 2003.[5] Mr. Stapleford prepared a written

---

[1] *See generally* Complaint (Compl.).
[2] *See* Declaration of Wei-Drin Lee In Support of Motion in Limine To Exclude Expert Testimony Of Michael Stapleford (Lee Decl.), Ex. 1. The paint streaking problem is sometimes referred to by the plaintiff as "uneven sheen" of the paint.
[3] *See* Compl. at ¶ ¶ 8, 9, and 15.
[4] *See* Lee Decl., Ex. 2 at p. 2, Interrogatory Response No. 11.
[5] Mr. Stapleford's report notes that as of his on-site inspection in June 2006, the streaking in the paint "was no longer visible." Lee Decl., Ex. 1 at 8. The central issue remaining is thus the cause of the alleged lack of paint adhesion.

report regarding his findings pursuant to Federal Rule of Civil Procedure 26(a)(2).[6] His report contains the following conclusion:

> The primer that is applied to the building appears to be properly formulated. The paint conforms to the specifications provided. This primer appears to have initially established adhesion, but did not maintain adhesion to the panels in specific areas. Most of the areas with a lack of adhesion are on the south side of the building. The peeling was likely caused by inability of the primer and paint coating to maintain adhesion during differential thermal expansion caused by changes in temperature.
>
> At this time the reason for the flat finish, the recurring streaking on the painted surface and the staining on the windows has not been determined.[7]

At his deposition, Mr. Stapleford also testified regarding two additional opinions not disclosed in his written report:

> "The paint was mixed with too much tint causing the bleed out and the uneven sheen."
>
> "The primer cannot maintain the adhesion [on] the substrate in the environment to which it is exposed."[8]

On the specific subject of adhesion, Mr. Stapleford's report addresses three types of tests:

- <u>Mr. Stapleford's performance of "tensile" adhesion tests defined by ASTM D4541</u>, done during his on-site inspection of the building on June 4 and 5, 2006.[9]

---

[6] *Id.,* Ex. 1, at 7-14.
[7] *See* Lee Decl., Ex. 1 at 11.
[8] *See* Lee Decl., Ex. 3 at 26:4-24. The citations to Mr. Stapleford's deposition testimony refer to a rough draft transcript which has not been corrected by the court reporter or witness. At the time this motion was filed, the final certified transcript was not yet available.
[9] ASTM D4541 is a test standard created by the American Society for Testing of Materials (ASTM) using an adhesion tester instrument called an Elcometer. Lee Decl., Ex. 1 at 8; Ex. 3 at 46:9-19. The Elcometer is a pole tester that is attached directly to the surface of the paint and then pulled straight off to measure tensile strength. *See id.,* Ex. 3 at 46:9-19.

Heller Ehrman LLP
510 L STREET, SUITE 500
ANCHORAGE, AK 99501-1959
TELEPHONE (907) 277-1900

- Mr. Stapleford's on-site observation of evidence of other "previous testing" left on the RAM building, which he believed to be defined by ASTM 4541 as well as ASTM 3359.[10]

- Mr. Stapleford's laboratory testing in which he applied samples of the paint and primer used to paint the RAM building in 2003 onto an "exemplar substrate" – a piece of fiberglass reinforced concrete with mineral coating purportedly similar to the substrate material of the RAM building.[11]

Mr. Stapleford's opinion that the primer was not able "to maintain adhesion to this particular substrate in this particular environment" was based on his observations of "previous tests" on the building, his own lab testing, and his first-hand observation of lack of adhesion during his on-site test.[12]

## III. ARGUMENT

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[13]

District courts serve as gatekeepers to ensure that expert testimony is both reliable and relevant.[14] This inquiry is intended to "make certain that an expert, whether basing

---

[10] ASTM 3359 is another type of adhesion test using a "tape pull" method. Lee Decl., Ex. 1 at 8. In the ASTM 3359 test, the paint area to be tested is scored with a knife, covered with a specific type of adhesive tape which is then brushed and pulled off the application material (also known as "substrate") to determine if any paint is removed along with the tape.

[11] Lee Decl., Ex. 1 at 9.

[12] *Id.,* Ex. 3 at 99:12-100:5.

[13] Federal Rule of Evidence 702.

[14] The admissibility of expert testimony in a diversity case is a matter of federal law. C. Wright, Law of Federal Courts § 93 (4th ed. 1976). *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 580 (1993); *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000); Fed. R. Evid. 702.

Heller Ehrman LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone (907) 277-1900

testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[15]

### A. Mr. Stapleford's Testimony Is Not Reliable Because He Is Not Qualified.

In order to be considered reliable, the proponent of the expert testimony must show by a preponderance of the evidence that the expert is (1) qualified to render the opinion and (2) that his underlying methodology is scientifically valid.[16]  F.R.E. 702 requires that a witness be qualified "by knowledge, skill, experience, training, or education."  Mr. Stapleford does not meet the standards necessary for him to be qualified as an expert on the performance of paint applied to the exterior buildings, and in particular, with regard to paint adhesion in that context.

First of all, Mr. Stapleford's educational background is characterized primarily by his degree in *mechanical* engineering.[17]  He has no specialized educational background in chemistry.  Mr. Stapleford expressly testified that he had no training or course work regarding paint related to exterior application on buildings or any additional training related to chemistry that would be relevant to this case.[18]  His certifications are limited to the automotive area, namely automotive collision repair, automotive structures, automotive repair fraud, and accident reconstruction.[19]  These subject areas have no bearing on the performance of exterior paint applied to buildings.

Second, Mr. Stapleford lacks any relevant work experience that would qualify him as an expert on issues related to paint performance.  His prior employment is confined to working as an engineer for aircraft structural design, a heavy equipment mechanic, an

---

[15] *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1988).
[16] *Daubert,* 709 U.S. at 589.
[17] *See* Lee Decl., Ex. 1 at 3.
[18] *See* Lee Decl., Ex. 3 at 12:9-23.
[19] *See* Lee Decl., Ex. 1 at 3.

automotive supplier, and an inspector for automotive collision consultants.[20] None of his work experience relates to selling paint or applying paint to the exterior of buildings.[21] Mr. Stapleford testified that during his employment as a consultant, from 2003 to present, this present litigation is his only case relating to paint failure.[22] Furthermore, out of the 23 cases in which he has served as a testifying expert, identified pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), he confirmed that not one case involved materials similar to the materials he analyzed in the present case.[23]

In addition to his lack of relevant education or work experience, Mr. Stapleford also lacks any other knowledge or skill qualifying him as an expert on paint performance in exterior applications. Most notably, he had little knowledge of or experience with the various adhesion tests he used to prepare his expert report. With respect to the ASTM 3359 "tape pull" test, he testified that prior to this case, he had only performed one such test in the distant past.[24] With respect to the ASTM D4541 "tensile" test using the Eclometer, Mr. Stapleford testified that he had to familiarize himself with the standard because he had *never* performed D4541 test prior to this case.[25] Furthermore, he did not know how to interpret his Eclometer results – *i.e.,* he did not even know what was the standard acceptable range of adhesion using ASTM D4541 for latex paint, the kind of paint at issue in this litigation.[26]

With respect to his opinion regarding the cause of the purported "uneven sheen" of the paint, Mr. Stapleford testified that he did not know what were the standard gloss

---

[20] *See* Lee Decl., Ex. 3 at 13:18-14:23.
[21] Although Mr. Stapleford testified that he has applied paint to several automobiles, he also explained that automotive paint is not the same kind of paint used in exterior application to buildings. *Id.* at 15:3-17; 12:5-8. In particular, he testified that the automotive paint dries faster and unlike exterior paint for buildings, is not water-based. *Id.* at 43:11-45:11. *Id.* at 14:24-17.
[22] *Id.* at 17:3-12.
[23] *Id.* at 17:13-20:4; 20:17-21 ("None of the trials relate to paint[] composition.").
[24] *Id.* at 91:8-19.
[25] *Id.* at 50:5-14.
[26] *Id.* at 51:12-21.

ranges for various kinds of paints and that he could not explain how paint gloss is measured.[27] Mr. Stapleford's resume and testimony amply demonstrate that he lacks the fundamental education, work experience, knowledge or skill necessary to be qualified as an expert on the paint performance issues in this litigation.

**B.   Mr. Stapleford's Testimony Is Not Reliable Because His Underlying Methodology Is Not Scientifically Valid.**

**1.   Mr. Stapleford's Relied On Unknown "Previous Tests" For Adhesion Performed On The Building.**

To the extent Mr. Stapleford based any of his conclusions on certain unknown "previous tests" performed on the building, his opinion is unreliable. Mr. Stapleford did not observe these tests being done, nor did he review or analyze any reports of these tests. Rather, he simply visually inspected what appeared to be the remains of other adhesion testing performed on the building and then interpreted purported results based on his observations.[28]

It is not scientifically valid to rely on such "previous tests" where Mr. Stapleford had no knowledge of the circumstances under which they were performed, including who performed the tests or what procedures were used. Mr. Stapleford admitted as much during his deposition. For example, with respect to a "previous" ASTM D4541 tensile test identified in his expert report in Figures 1 and 2, he testified he "ha[d] absolutely no idea" what the tensile reading was and that he was unable to draw any conclusions from that test regarding adhesion.[29] He also testified with regard to a "previous" tape pull test performed per ASTM 3359 (identified in his report in Figure 3), he did not know when the test was performed, what conditions were present, what kind of tape was used, whether the "previous tests" had been contaminated after they were performed, or whether any moisture could have entered the broken film left by the test which could

---

[27] *Id.* at 45:12-46:4.
[28] *See* Lee Decl., Ex. 1 at 8.
[29] *Id.,* Ex. 1 at 8 and Ex. 3 at 55:16-57:18.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF MICHAEL STAPLEFORD
Michael Investments v. The Glidden Co., 3:05-cv-223 (TMB)
Page 7 of 12

have affected adhesion.[30] As Mr. Stapleford himself explained, "And we can expand that I don't know whether the test was properly performed."[31]

Given that Mr. Stapleford is completely unaware of the conditions or circumstances surrounding these purported "previous tests" or whether they were even performed correctly, it is not scientifically valid for him to base any conclusions on them.

### 2. Mr. Stapleford Applied No Scientific Methodology To Support His Opinion Regarding Paint Sheen.

With respect to his opinion regarding the cause of the purported "uneven sheen," Mr. Stapleford testified that he did not make any actual measurements of sheen or gloss during his testing; nor did he even know what were the standard gloss ranges for various kinds of paints.[32] Mr. Stapleford also specifically testified that his own testing did find any link between alleged excess tint in the paint and "uneven sheen," but rather that his opinion was based on *correspondence* between the parties regarding the problems and an ICI product evaluation report which logged internal tracking of the complaint regarding the RAM building.[33] He applied no independent procedures of his own to determine the cause of the purported "uneven sheen" of the paint, and his "expert opinion" on this subject is based solely on his review of documents produced in the case rather than any scientifically valid method. When asked why he did not independently test for the cause of the "uneven sheen," Mr. Stapleford stated that he did not believe he could determine the cause:

Q. And why can did you not feel that you could?

A. Because there are various reasons why it might happen. And by the time I became involved, the bleed-out had occurred, it had gone away. I didn't have any really reliable evidence that I could go on to decide what it

---

[30] *Id.,* Ex. 1 at 8; Ex. 3 at 57:19-60:25.
[31] *Id.,* Ex. 3 at 58:20-24.
[32] *Id.* at 45:12-46:4.
[33] *Id.* at 103:20-105:20; 108:23-109:10.

is that caused that. It sounded like excessive tinting. But once again, I'm not going to go out on a limb to guess these things.[34]

### C. Mr. Stapleford's Testimony Is Not Relevant Because He Failed To Properly Apply His Methodology To Facts In Issue

In order for expert testimony to be relevant, the proffering party must show that the reasoning or methodology used is applied properly to the facts in issue.[35] Admissibility thus depends on whether the methodology or technique used by the expert "fits" his conclusions.[36]

As discussed above, Mr. Stapleford's report refers to tensile tests he performed using the Eclometer per ASTM 4451. Mr. Stapleford, however, testified that his use of the ASTM 4451 tests did not yield any informative results. On the contrary, he testified that his inconsistent test results using the Elcometer "told me that the numerical values were not the best way to approach the adhesion problems on this buildings" and that the "numerical results were inconclusive."[37] He was unable to apply this methodology to the facts in this case.

Mr. Stapleford's own "laboratory" testing suffers from the same defect by failing to apply his methodology to the facts. Although he opined that the cause of the alleged paint failure was its inability to maintain adhesion "during differential thermal expansion caused by changes in temperature" in the environment in which it was applied, his lab procedures did not take into account any such facts. He did not record the temperature of the substrates to which he applied paint, nor did he vary the temperature or utilize any procedures to assess the effect of changes in temperature on the paint applications that

---

[34] *See* Lee Decl., Ex. 3 at 117:18-118:3.

[35] *Daubert,* 509 U.S. at 589-90; *see also Guidroz-Brault v. Missouri Pacific R. Co.,* 254 F.3d 825, 830-31 (9th Cir. 2001) (excluding expert opinions not sufficiently founded on the facts).

[36] *United States v. Hankey,* 203 F.3d 1160, 1169 (9th Cir. 2000).

[37] For example, he testified that in areas where he could peel paint away, he obtained readings anywhere ranging from a low adhesion reading of 190 psi to high reading of 500psi (the *maximum* adhesion reading the instrument could record). *Id.,* Ex. 3 at 62:3-11 and Ex. 1 at 8. *Id.,* Ex. 3 at 52:3-55:10.

Heller Ehrman LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone (907) 277-1900

were the subject of his test.[38]  In his lab testing, therefore, Mr. Stapleford did not properly apply his methodology to relevant facts.

### D. Mr. Stapleford's Testimony Would Not Assist The Trier Of Fact In Understanding Paint Performance Issues Related To The RAM Building.

"Expert testimony is admissible under Fed.R.Evid. 702 if it addresses an issue 'beyond the common knowledge of the average layperson.'"[39]  As the Ninth Circuit has stated, "A layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion."[40]

Mr. Stapleford's resume indicates that his "technical areas of specialization" are "Accident Reconstruction, Computer Modeling and Animation, Collision Repair Inspection, Automotive Fraud Detection, Vehicle Systems Analysis, and Slip/Trip and Fall Analysis."[41]  His deposition testimony is consistent with this description of his areas of knowledge.  In testifying on issues regarding the performance or cause of failure of the paint applied to the exterior of the RAM building, Mr. Stapleford is testifying outside his area of expertise and hence offers no assistance beyond that of an opinion from a lay witness.

The limits of Mr. Stapleford's purported expertise are widely evident throughout his report and deposition testimony.  Time and time again, his observations were confined to those of a lay witness rather than an expert formulating his conclusions.  For

---

[38] *Id.,* Ex. 3 at 89:3-90:17; 101:17-102:3.

[39] *United States v. Hanna,* 293 F.3d 1080, 1086 (9th. Cir. 2002) (quoting United States v. Morales, 108 F.3d 1031, 1039 (9th Cir.1997) (en banc)); *Torres v. Johnson Lines,* 932 F.2d 748, 751 (9th Cir. 1991) (excluding expert testimony where evidence was not "so technical or complex that a jury could not have grasped it without the aid of experts").

[40] *White v. Ford Motor Co.,* 312 F.3d 998, 1008-09 (9th Cir. 2002).

[41] *See* Lee Decl., Ex. 1 at 3.

Heller Ehrman LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone (907) 277-1900

example, he failed to take any scientific measurements of moisture, humidity, and temperature during his on-site inspection, all of which may affect adhesion:

> Q. Did you take the surface temperature of the building at any time?
>
> A. No, I can only tell you it was hotter than a hundred degrees.
>
> Q. And that's also based on your personal perception?
>
> A. Yes. But that's something that we can pretty much prove, knowing that human beings are 98.6 degrees. Anything that's significantly hotter than the hand is over 100 degrees.[42]

Similarly, when Mr. Stapleford was asked if he performed any moisture tests, he testified, "No, it was really a beautiful day. Being a Southern Californian, I'm sensitive to excess humidity."[43] With respect to his opinion regarding the "uneven sheen" of the paint, Mr. Stapleford relied only on his review of correspondence between the parties and a document produced in the litigation to determine the cause. His review of such documents, however, would not be superior to a fact-finder's review of those documents, and hence his opinion does not aid in clarifying issues outside of a layperson's understanding. Mr. Stapleford also testified that he was able to peel away the paint by hand in some areas but that he was unable to obtain a comprehensible numerical reading from the adhesion test he performed on such areas.[44] Mr. Stapleford's observations and opinions are limited to those of a lay witness, not an expert on paint performance issues, and hence his opinions will not assist the fact-finder in understanding any issue outside of common knowledge.[45]

---

[42] *See* Lee Decl., Ex. 3 at 73:22-74:24.
[43] *Id.,* Ex. 3 at 75:3-10.
[44] *Id.,* Ex. 3 at 53:21-55:2.
[45] *See White,* 312 F.3d at 1008-09 (noting that because proffered expert relied on "simple logic" rather than his metallurgy expertise, he "established no more foundation than anyone than anyone trained in any kind of engineering, or even a lay person not trained in engineering, would have to venture the opinion").

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF MICHAEL STAPLEFORD
Michael Investments v. The Glidden Co., 3:05-cv-223 (TMB)
Page 11 of 12

## IV. CONCLUSION

For the foregoing reasons, ICI requests that this Court preclude Mr. Stapleford from testifying as an expert on issues related to paint performance in this case.

DATED: November 27, 2006                HELLER EHRMAN LLP

By: s/Wei-Drin Lee
 WEI-DRIN LEE (ABA No. 0505025)
 JAMES E. TORGERSON (ABA No. 8509120)
 Attorneys for Defendant THE GLIDDEN
 COMPANY, d/b/a ICI PAINTS

**CERTIFICATE OF SERVICE**
This is to certify that a true and correct copy of the foregoing
DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF MICHAEL STAPLEFORD was served **electronically** this 27th day of November, 2006, on the following recipients:

David H. Shoup
TINDALL BENNETT & SHOUP, PC
508 W. 2nd Ave., 3rd Floor
Anchorage, AK  99501
Telephone:  (907) 278-8533
Facsimile:  (907) 278-8536
e-mail:  Shoup@Tindall-law.com

s/Wei-Drin Lee
Wei-Drin Lee

SE 2188536 v1
11/27/06 3:08 PM (42647.0001)

Heller Ehrman LLP
510 L Street, Suite 500
Anchorage, AK  99501-1959
Telephone (907) 277-1900